UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

LAMAR GRIFFIN,

                       Plaintiff,

            -against-

GARRISON PROTECTIVE SERVICES,
INC.,
                       Defendant.

----------------------------------------------------------X

                                       **<u>ORDER</u>**
                             22 CV 4073 (CLP)

**POLLAK**, United States Magistrate Judge:

     On July 12, 2022, plaintiff Lamar Griffin ("Griffin" or "plaintiff") commenced this action against defendant Garrison Protective Services, Inc. ("GPS") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, <u>et seq.</u>, and New York Labor Law ("NYLL") §§ 190 <u>et seq.</u>, 650, <u>et seq.</u>, for late, and non-payment of, minimum and overtime wages. (Compl.[1]).

     On October 11, 2022, the parties informed the Court that they had settled this matter. (ECF No. 11). On November 28, 2022, the plaintiff, on behalf of both parties, filed a joint motion for settlement approval with a fully executed settlement agreement. (ECF No. 13). On January 5, 2023, the parties submitted their consent to Magistrate Judge jurisdiction, which the district court granted on January 10, 2023. (<u>See</u> ECF Nos. 15, 16).

     On January 13, 2023, this Court held a fairness hearing on the motion, pursuant to <u>Cheeks v. Freeport Pancake House</u>, 796 F.3d 199 (2d Cir. 2015). During the hearing, the Court

---

[1] Citations to "Compl." refer to the Complaint filed on July 12, 2022. (ECF No. 1).

directed the parties to review some of the provisions in the settlement agreement, and on February 11, 2023, plaintiff submitted an updated settlement agreement.  (ECF No. 17).

For the reasons set forth in this Order, the Court approves the parties' settlement agreement as modified as fair and reasonable and approves plaintiff's request for attorney's fees. Although the Complaint was filed as a putative collective action, no certification had been sought or granted; therefore, the matter is being settled as to plaintiff Griffin only.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff alleges that GPS is a domestic business corporation that maintains its principal place of business at 120 Lake Avenue South, Suite 24, Nesconset, NY 11767.  (Compl. ¶ 12). Plaintiff alleges that defendant employed plaintiff within the meaning of the FLSA, was an enterprise engaged in and/or affecting interstate commerce, and annually had revenues in excess of $500,000.  (Id. ¶¶ 11, 13).

Plaintiff Griffin was employed by defendant as a full-time Security Guard from February 2017 until March 2020.  (Id. ¶¶ 14-15).  Plaintiff alleges that he worked for defendant "Monday through Friday" and worked eight or twelve hour shifts.  (Id. ¶¶ 15, 19).  Although plaintiff does not specify on which days he would work eight hour shifts and on which days he would work twelve hour shifts, he specifically alleges that during the week of September 21, 2018 to September 27, 2018, he worked approximately 13.75 hours, and that during the week of February 8, 2019 to February 14, 2019, he worked approximately 20.5 hours.  (Id. ¶¶ 25-26). Defendant paid plaintiff on an hourly basis.  (Id. ¶ 22).  For example, during the week of September 21, 2018 to September 27, 2018, defendant paid plaintiff "[a]fter 'deduction,'" $166.25 at an hourly rate of $12.09, and during the week of February 8, 2019 to February 14, 2019, defendant paid plaintiff "[a]fter 'deduction,'" $307.50.  (Id. ¶¶ 25-26).

Plaintiff alleges that defendant failed to promptly pay plaintiff his minimum wages and overtime wages for all hours worked in excess of forty hours worked per week. (Id. ¶¶ 24-27). Plaintiff also alleges that defendant provided plaintiff with inaccurate pay statements. (Id. ¶ 30).

During the January 13, 2023 fairness hearing, the Court directed the parties to review the release and confidentiality provisions of the settlement agreement. (Minute Entry, dated Jan. 17, 2023). Additionally, the Court ordered the parties to review the settlement agreement's clause regarding future employment. (Electronic Order, dated Jan. 23, 2023). Plaintiff subsequently submitted an updated, executed settlement agreement ("Agreement") on February 11, 2023 (ECF No. 17), and on March 13, 2023, the parties filed a stipulation further modifying the Agreement. (ECF No. 18).

The parties propose to settle all of plaintiff's claims for a total of $20,000.00. (Pl.'s Ltr.[2] at 2; Agr.[3] ¶ 1(b)). According to the terms of the Agreement, plaintiff Griffin will receive $13,333.33 and plaintiff's counsel will receive $6,666.66[4] in fees and costs. (Pl.'s Ltr. at 2; Agr. ¶ 1(c)). As part of the consideration supporting the Agreement, the parties agree to release one another from any and all wage actions. (Agr. ¶¶ 2(a)-(c)).

<u>DISCUSSION</u>

I.    <u>Legal Standards</u>

In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of

---

[2] Citations to "Pl.'s Ltr." refer to plaintiff's letter motion for settlement approval filed on November 28, 2022. (ECF No. 13).

[3] Citations to "Agr." refer to the "Confidential Settlement Agreement and General Release" as executed and filed on February 11, 2023. (ECF No. 17).

[4] The Court notes that in plaintiff's letter motion, counsel writes that $6,666.6<u>7</u> would be given to counsel in fees and costs, but the Settlement Agreement itself provides that counsel will receive $6,666.66.

statutory rights brought about by an employer's overreaching.'" Le v. Sita Info. Networking

Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008)

(alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354

(11th Cir. 1982) (holding that, where an FLSA settlement is a reasonable compromise, the

settlement should be approved to "promote the policy of encouraging settlement of litigation").

Courts have identified several factors to consider when determining whether a proposed

settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which
> 'the settlement will enable the parties to avoid anticipated burdens
> and expenses in establishing their respective claims and defenses';
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether 'the settlement agreement is the product of arm's-length
> bargaining between experienced counsel'; and (5) the possibility of
> fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting Medley v.

American Cancer Soc., No. 10 CV 3214, 2010 WL 3000028, at *1 (S.D.N.Y July 23, 2010)); see

also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25,

2018) (endorsing the factors from Wolinsky).

    "When presented with a settlement for approval, a district court's options are to (1)

accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if

a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc.,

948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)). "[E]ven

though a district court has a duty to review an FLSA settlement for reasonableness to prevent any

potential abuse, this does not grant the court authority to rewrite contract provisions it finds

objectionable." Id. at 606. Rather, if the court finds one or more provisions of an FLSA

4

settlement agreement to be unreasonable, the Court must reject the proposed settlement.  Id. at 605.

II.    Settlement Terms

The Court finds that the terms of the Agreement as modified are fair and reasonable.  The Court notes that the Agreement, as filed in executed form on February 11, 2023, does not contain any confidentiality clauses, non-employment clauses,[5] or non-disparagement clauses that do not contain a carve-out for truthful statements, all of which have previously been rejected by courts in this Circuit.  See Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (holding that a settlement clause in which plaintiffs agree to never seek re-employment with defendant contravenes the FLSA); Lopez v. 41-06 Bell Blvd Bakery LLC, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016) (explaining that a confidentiality clause is impermissible) (collecting cases), report and recommendation adopted, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016); Martinez v. Gulluoglu LLC, No. 15 CV 2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (holding that for a non-disparagement clause to be permissible in an FLSA settlement agreement, "it must include a carve-out for truthful statements about plaintiffs' experience litigating their case").  Specific terms are discussed in turn below.

A.    Settlement Amount

The total proposed settlement amount is $20,000.  (Pl.'s Ltr. at 2).  Plaintiff Griffin will receive $13,333.00 under the Agreement.  (Id.; Agr. ¶ 1(c)(i)).  Based on a review of payroll records and other documentation, plaintiff concedes that no wage underpayment occurred in violation of the FLSA or NYLL.  (Pl.'s Ltr. at 3).  However, plaintiff nevertheless alleges that

---

[5] The Court notes that although the Agreement originally contained a non-employment clause (see Agr. ¶ 3(c)), the parties' March 13, 2023 stipulation contains the parties' agreement to amend the Agreement by deleting the paragraph prohibiting plaintiff's future employment with defendant.  (ECF No. 18).

defendant paid plaintiff his wages late in violation of the FLSA and NYLL. (Id.) Both plaintiff and defendant find the $20,000 amount to be a fair compromise and seek to avoid the expense and time associated with more extensive discovery and ongoing litigation, including the "burdens of testifying" and "the hardship of waiting for the payment of any recovery." (Id.) The parties also argue that "the certainty of settlement is better than the uncertain outcome of protracted litigation." (Id.) Here, defendant has already provided significant time record and pay stub documentation. (Id. at 4.) Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing her claims, and seeing no issues regarding potential coercion, fraud, or collusion in this case, the Court finds that the settlement amount reached is a fair and reasonable compromise. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

### B.    Scope of the Release

According to the Agreement, plaintiff, defendant, and their related parties, agree to release each other from any and all wage claims[6] arising from conduct through the date of the Agreement. (Agr. ¶ 2(a)).

Some courts in this Circuit will approve general release terms that are mutual and bind all parties equally. See, e.g., Guan v. Long Island Bus. Inst., No. 15 CV 2215, 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving an FLSA settlement with a broad release that was mutual as fair and reasonable in light of the rest of the settlement agreement); see also Burgos v. Northeast Logistics, Inc., No. 15 CV 6840, 2018 WL 2376481, at *4 (E.D.N.Y. Apr. 26, 2018) (explaining "when general releases are reciprocal, courts in this Circuit have been more

---

[6] "Any and all wage claims" is defined as "including, without limitation, any claims under the [FLSA] . . . and the [NYLL] . . . , for which Griffin had, has, or hereafter may have against GPS," and "[s]imilarly, GPS and the Released Parties release Griffin from any and all wage actions, including, without limitation . . . any claims under the [FLSA] . . . and the [NYLL]." (Agr. ¶ 2(c)).

6

tolerant"), <u>report and recommendation adopted</u>, 2018 WL 2376300 (E.D.N.Y. May 24, 2018).

Two factors that counsel courts to approve of general releases that are reciprocal are whether the

action is a non-class action and whether plaintiffs no longer work for defendants.  <u>See</u> <u>Burgos v.</u>

<u>Northeast Logistics, Inc.</u>, 2018 WL 2376481, at *4 (citing <u>Lopez v. Polo-St. Ann. L.P.</u>, 176 F.

Supp. 3d, 340, 344 (S.D.N.Y. 2016)).  The release term should also be "symmetrical" with

respect to the groups waiving their respective rights.  <u>Id.</u> at *5–6 (citing cases).

  This action, though filed as a putative collective action, is no longer proceeding as such

and plaintiff no longer works for defendants.  The release is not only "symmetrical" but it also

releases only wage claims.  Therefore, this Court finds that the mutual general release term is fair

and reasonable in this case.

C.  <u>Attorney's Fees and Costs</u>

  According to the proposed settlement agreement, $6,666.66 of the settlement amount will

go to plaintiff's counsel as counsel's fees and costs.  (Pls.' Ltr. at 2; Agr. ¶ 1(c)).  According to

plaintiff's counsel's declaration in support of the parties' motion for settlement approval, and an

attached exhibit of counsel's billing and cost record, the costs requested total $454.40 and

include the filing fee and for service of process.  (<u>See</u> ECF Nos. 14, 14-1).  Courts often award

costs that are "incidental and necessary to [plaintiff's] representation." <u>Mitland Raleigh-Durham</u>

<u>v. Myers</u>, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).  Plaintiff's counsel's fees reflect

approximately one third of the net settlement amount,[7] and according to plaintiff's counsel,

plaintiff agreed to a one-third contingency fee.  (Pl.'s Ltr. at 4).  Counsel notes that such fee

awards are "considered reasonable" in this Circuit.  (Pls.' Ltr. at 4 (citing <u>Calle v. Elite Specialty</u>

<u>Coatings Plus, Inc.</u>, No. 13 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014))).

---

[7]  The net settlement amount is $ 19,545.60 and plaintiffs' counsel's fees are $6,212.26.  The Court calculates that counsel seeks 31.78% of the net award.

Courts must assess the reasonableness of plaintiffs' attorney's fees, regardless of whether the fee has been negotiated as part of the settlement amount.  Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)).  The Second Circuit has set forth six factors to determine whether attorney's fees in FLSA settlements are reasonable:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) (omission in original) (quoting In re Union Carbide Corp. Consumer Prods. Bus. Sec Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

 In calculating attorney's fees, courts have used one of two methods:  the "lodestar" method and the "percentage-of-recovery" method.  See Allen v. Taylor, 795 F. App'x 79, 80 (2d Cir. 2020).  When using the "lodestar" method, courts multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002).  Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors, Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), and courts in this Circuit have applied a multiplier to the lodestar calculation.  E.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (holding "a multiplier near 2 should, in most cases, be

8

sufficient compensation for the risk associated with contingent fees in FLSA cases"); see also Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

       Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417–18 (2d Cir. 2010) (collecting cases). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. See Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases). However, a one-third percentage may be "simply too great" in relation to the work performed. See Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

       In FLSA cases, regardless of the method used, "[t]he Court must . . . separately assess the reasonableness of plaintiff's attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." Beckert v. Rubinov, 2015 WL 6503832, at *2 (omission in original) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)). Here, plaintiff was represented by David Wims, an attorney at the Law Office of David Wims, with eighteen years of experience in employment law work, including wage and hour litigation. (ECF No. 14). Counsel bills at a rate of $400 per hour, and so he notes that having spent 21 hours on the matter, his fee award using a lodestar calculation ($8,400.00 plus $454.40 in costs) would be higher than the percentage of recovery method here, for which he will receive an award of $6,666.66. (ECF No. 14). Given that counsel was able to navigate a

settlement successfully between experienced counsel, the Court finds the award of fees is reasonable.

The other <u>Goldberger</u> factors also weigh in favor of finding the award fair and reasonable: the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here. <u>See</u> <u>Beckman v. KeyBank, N.A.</u>, 293 F.R.D. 467, 481 (S.D.N.Y. 2013). Thus, as plaintiff's counsel is requesting one-third of the settlement, a percentage typically found reasonable in this Circuit, and upon review of the parties' submissions and in consideration of the <u>Goldberger</u> factors set forth above, the Court approves the agreed-upon attorney's fees.

<u>CONCLUSION</u>

In this case, after holding a fairness hearing and reviewing the parties' submissions, the Court finds that the settlement reached is a fair and reasonable compromise of plaintiff's claims. The Court reached its determination after considering the amount received, the issues that might have limited recovery, and the fact that the parties engaged in arms'-length negotiations between experienced counsel. <u>Cf.</u> <u>Wolinsky v. Scholastic, Inc.</u>, 900 F. Supp. 2d at 355 (examining the factors courts consider when approving FLSA settlement agreements). The Court also finds that plaintiff's counsel's request for fees and costs is reasonable.

The parties are directed to file a stipulation of dismissal by **April 5, 2023.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: March 22, 2023

10

Brooklyn, New York

/s/ Cheryl L. Pollak

_____

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York